Good morning. May it please the Court, I'm Tanya Morrow, an Assistant Federal Defender from Medford, Oregon, and I'm representing Oregon State Parolee Donnie Browder in this case. And as the Court is aware, he is seeking relief for an injury caused by the Parole Board's order in 1999. That 1999 order sentenced him to 181 months on a decision to deny re-release. That sentence was a new injury, and Mr. Browder has been diligently pursuing a challenge of it since 1999, and he should be entitled to have the merits of this claim reached by the federal court. The basis of this challenge, as the Court is aware, is the Board's lack of jurisdiction over him. The Board's position, however, is that Mr. Browder may not challenge that lack of jurisdiction in 1999 because he may have had a similar claim in 1995, and that position is wrong because it fails to acknowledge that there was a new injury with the 1999 decision. What element was present in 1999 which was not known or reasonably should have been known in 1995? There was several different factual predicates, I believe. One was, again, a new exercise of authority that created a new injury, the sentence itself. In addition, he learned that... The first one was what? I didn't catch that. The exercise of authority, again, new exercise of authority in 1999, new injury, 181-month sentence, and in addition, the disclosure of his investigation. But wait a minute. He had a parole date as of March 23, 1993. That's correct. But he didn't get that hearing, and he knew that he didn't get that hearing as of March 23, 1993, right? He did not have a hearing. And he knew that in 1995, that the parole officer recommended a replication because of substance abuse, and he hadn't gotten his parole hearing and been released. He shouldn't have been under parole at all, is his claim, but he knew that in 1995. So why does the exercise of authority have any relevance here? The third thing that's different in 1999 is he learned that the parole officer had misrepresented the fact that the board had extended his active supervised parole. It had not. In 1993, he asked, the parole officer said, the board has continued your active parole. It did not. It had not. What's a new fact in 1999 was Mr. Browder's realization that his parole officer had misrepresented to him the fact that the board failed to discharge him as it was required to by March of 1995. No, they weren't required to discharge him. He had an opportunity to be discharged at the hearing, right? Well, that hasn't been ruled on, Your Honor. We believe, and we've asserted on the merits, which the district court did not reach, that he was entitled to discharge under the 1982 rules. Because he got a hearing date? No, he did not have a hearing date, in fact. He had no hearing date set at all. He had a tentative discharge date set for 1993, and then the parole officer merely advised him, misadvised him, misrepresented that the board had continued that date when it had not. And the ultimate authority of the board, under the 1982 rules, was that they could continue that active supervised supervision, which was the key to discharge of parole, only after 36 months. So by March of 1995. So what they should have done was charge him again, sentence him, and he'd still be there. Well, I'm not sure what you mean by that. They found him guilty. Well, that's what the legislature, that's why they had indicated that they only wanted a six-month period of active supervision, because the legislature in 1981 said, we think that we should afford all the criminal justice procedural protections to when our parolees reviolate. They should be prosecuted and sentenced based on their new crime. They shouldn't be prosecuted under relaxed standards of the parole board and sent to prison based on a parole violation. So that was the basis of the 1981 statutory amendments that led to the 82 rules. And while the board has, in the 20J letter, indicated now that the Green case it believes supports its position, the statutes and the rules interpreted in Green were 1985 rules. And while maybe similar in purpose, they are specifically distinct in language. And they talk about a, they return to the term conditional discharge. They don't use, and they don't use language of the 82 rules that clearly and unequivocally equate active supervision to a discharge. Discharge, as we know by the Oregon Court of Appeals and Davidson, meant the termination of the sentence. That was a law that changed, too. In 86, the people of the state of Oregon passed an initiative, and in 86 they decided no, parole should extend for the entire term of the sentence. That wasn't in effect at the time of Mr. Brower's crime in 1980, 1981, excuse me, in 83. So the parole board has essentially applied new law to him. And so we can get to the merits. We can go back to the district court. Or if you're prepared, I think we're ready for you to rule on the merits as well. The Haskin court, the Green court, number one, Green court didn't interpret the same rules. The Haskin court, neither the Green court or the Haskin court considered the federal constitutional issue of whether or not those board's rules were mandatory and required a decision by the board to discharge him from his parole, which means end his sentence, and whether he had a liberty interest in that under those mandatory terms. So with all due respect, Judge Bea, we believe that as it relates to the merits, we should prevail there as well. I'm thinking, however, that perhaps there's still reason that you may consider whether the statute of limitations is grounds to uphold the district court's decision. So I want to go back to that for a minute and clarify for you, in case my brief was a little confusing, which I found it on re-review, and I apologize for that inconvenience. But at one point I indicate that I don't believe that this court's decision in Hassam was similar to the Supreme Court's decision in Johnson, and then I go on to say essentially that they held in a similar way. What I was trying to say there, and what I'll clarify today, is this. The Supreme Court in Johnson, they looked at the triggering event in 2255, which is similar to ours in 2254, or that is subparagraph D, and they said, no, Congress did not intend for us to deem that the statute of limitations is triggered when the factual predicates haven't arisen yet. And what, of course, Johnson stood for is they found that the vacature of the Georgia convictions was a part of that factual predicate, and so the claim, Mr. Johnson's 2255 claim, didn't arise until he had gone back to the Georgia courts and got that prior conviction vacated. In this case, this man claims he should have been turned loose in 1993, but through a bureaucratic mistake, he wasn't turned loose. He shouldn't have been subject to parole at all. In 1995, he is given 180 days parole revocation because of substance abuse. At that point, he knows that at least the state is taking the position that he's subject to parole.  Why doesn't he move then? Well, that's the distinction. He didn't think he was not supposed to be subject to parole. It is something that he could have considered. It was an injury that he had sustained technically, but it wasn't the same injury. As what? Just as in Johnson, he can't be obligated to act at a time when he had no real incentive to act. He can choose. 180 days in jail is an injury which would put a normal man on due diligence inquiry as to the basis, isn't it? Not necessarily, Your Honor. Not when his remedies are specifically judicial review of a revocation order in which he admitted the conduct. He knew that there was a matrix that would guide the board as to his revocation sanction. He admitted he had violated his parole. He's not going to seek review of that necessarily. Are you saying that he agreed to undergo 180 days of revocation time rather than be charged with the substance abuse? Is that the deal? I don't know that he made a choice in that regard. I guess it was the state that decided not to choose to prosecute him. Well, they usually say we'll dismiss the charges if you accept the revocation of parole. It's hard to question those decisions today. If he did that, then he would know that he was agreeing to a revocation of parole which didn't exist. Well, there's no – well, if I understand your point, there's no reason for us to speculate as to whether or not he actually obtained a bargain from the state because it decided not to prosecute him for that. We don't know that. There's no facts in this record, and I don't think it's appropriate for us to assume it. What's important here is that there was a new injury, and at that time, he still had the right to raise the jurisdictional issue. The incentive doesn't change. It does change, I believe.  Well, it does just as it did with Johnson. Well, Mr. Johnson could have, even before his federal prosecution, gone to the Georgia courts and sought vacature of his convictions where he had no counsel, once it became clear in the law that that was an unlawful conviction because he had no counsel. But it wasn't until the federal prosecution that he could even be deemed to have an interest in doing so because of potential for a new injury. And that's what the Supreme Court said. But why doesn't he have the same incentive, the same motivation in 95? He's facing 180 days. He's facing, given his history, the continuation of parole and the possibility of being hauled in yet again in the future even after the 180 days is gone. I don't think the incentive changes. Well, I suggested in our brief that it could. We don't have to second-guess, in this case, whether he might have wanted the resources of the state at that time. He can choose to want to have and perhaps live in the fear of being incarcerated again. But under the rules at the time, he knew that the board's matrix is, if he was going to be revoked, he was going to get his 90-day or 180-day sanction.  greater than the minimum term that the sentencing judge recommended, that he had reason to act on his new injury. I'm not saying, of course, that he couldn't have raised the issue of jurisdiction back in 1995. But we have to also look at it in the context of federal habeas relief and whether or not, as I've suggested, the law in Oregon was confusing. The federal law was confusing as far as any statute of limitations. And I purport that it's even confusing as to whether or not he could have maintained whether he had enough time in order to file an actual federal habeas petition while he was in custody. I think the law is still a little bit unclear as to whether or not you actually have to file while you're in custody and then it's deemed not to become moot because you're still under supervision. But definitely under Oregon law, there is an awful lot of confusion about whether he could even raise the board's failure to discharge him from parole on the 1995 revocation decision. That was not resolved until the Haskin opinion. Was that the 2003 opinion? That was the 2003 Haskin opinion. The current action was filed before that. The current action, he denied that the board issued its decision. He was waiting for Haskins to come along because he filed this one before that, didn't he? Yes, no, but he filed. He didn't appeal judicial review. He actually filed state habeas. That's what he was left with under state law. He could not seek judicial review from the board's decision to deny re-release. What should be our bottom line so far as you're concerned? I think you should recognize that the Supreme Court in Johnson said that the triggering event is not when diligence starts, which I think is the distinction with Hassan. Hassan suggests that the triggering event is when the petitioner could have determined what his counsel failed to investigate, which was that there was jury misconduct. The triggering event is when the claim arises, period. You can look to see whether the defendant was diligent in getting there, but it doesn't arise. I mean, the statute's not triggered until it arises. And in this case, with the new injury, the new exercise of jurisdiction, that should be the bottom line in this type of case. I'd like to reserve some time for rebuttal. Thank you. Thank you. May it please the Court. Carolyn Alexander, co-respondent, Brian Bullock. I'd like to step back a moment and just parse out some of the issues in this case, because I think petitioners conflated the issues and also created a lot of confusion about the issues. Regarding timeliness and equitable tolling, petitioner has to show due diligence for both timeliness and equitable tolling. Judge Bea is exactly right. The factual predicate for his claim arose at the first time the Board exercised its jurisdiction in 1995. He knew for sure, and there is no dispute in the record, he received notice of that revocation. He was revoked. He served a 180-day sanction. Under 2244, sub D, sub 1, sub D, it's the factual predicate of the claim, as explained in Hassan, when the petitioner knew the important facts. Petitioner knew the Board was exercising its jurisdiction in 1995. The important fact is the Board exercises jurisdiction to take him bodily and put him in prison. Exactly, Your Honor. That's exactly right. Now, petitioner is correct that subsequent to 1995, the Board continued to exercise its jurisdiction, including another revocation in 1999. Now, the difference there is that the Board, at that point, after six or seven revocations and sanctions of lesser amount of time, decided, we're done with this guy. We're going to deny re-release and require that he serve the remainder of his sentence. At that point, petitioner went, whoa, now that gets my attention. Well, the factual predicate is not when the sanction is serious enough to get his attention. It's when he knows the important facts, in this case, based on his claim, that the Board was continuing to exercise jurisdiction over him. Now, in Petitioner's 28J letter, he argues that the Board is saying that he can't challenge jurisdiction. No, that's not the point. That's not the point at all. He can challenge jurisdiction at any time, and in fact, he did that in 1999. And that claim went all the way through the Oregon Supreme Court and was rejected. That's not the point here. It's when he knew the important facts. And this case is very much like Johnson. In the red brief at page 24, in the footnote where the state talks about the Johnson case, the Supreme Court held that the requirement of due diligence must demand something more than no diligence at all if the state court decision occurred in a state that itself imposes no limitation of time for collateral challenges. That's the problem here. In state habeas, he can challenge jurisdiction at any point, every time the Board exercises jurisdiction. But federal habeas still has that one-year statute of limitations. So you can't wait, as the petitioner or defendant in Johnson did, way down the line and expect to be timely if you've waited to raise your challenge in your state court proceedings. It just doesn't work like that. And that's exactly what happened here. He waited for an additional at least four years, if not six years, to litigate this jurisdiction issue in state court. Meanwhile, the federal statute had been ticking away, and that's his problem. Counsel, my notes indicate that besides his 180-day revocation in 1995, he was revoked five more times and served additional sentences then. Correct, Your Honor. And that was all before 1999. Correct. When the parole board gave up and said 181 months, right? Exactly, exactly. Because there was a pattern of revocation, short sanction, more criminal activity, revocation, short sanction, more criminal activity. So at that point, the board said, you need to serve the remainder of your sentence. You can't do it successfully on parole. So that's the basis of the timeliness and the equitable tolling argument that the state poses. One clarification, however, or one point, I should say, on this equitable tolling issue, when Petitioner claimed, but I couldn't have known because my parole officer misrepresented to me that the board had extended parole. The district court, Judge Aiken, found that that, well, actually he filed an affidavit in district court, and his assertions in that affidavit were not credible based on the record. And the record clearly showed Petitioner's lack of credibility because in state court, what he said specifically was not that his parole officer misrepresented to him that the board was extending his parole, but in a state proceeding, he claimed that his parole officer had not provided him with notice that his parole had been extended. So it was exactly the opposite thing, that he told the state court that he was telling the federal court. And based on that inconsistency in the record, Judge Aiken found that his story in federal court was simply not credible. And you can compare those stories at Excerpt of Record 241, that's his federal habeas affidavit, with his claim in state court, which is at Excerpt of Record 25. So the district court can certainly make a finding of credibility based on the record, when the record clearly shows that he told the state court an entirely different story than what he told the federal court. So there is no basis for his equitable tolling claim. There was no reason why he couldn't have pursued a claim, the claim he raises now. Regarding the merits of the claim, I'd like to unconfuse that issue a little bit, if I can as well. Petitioners claim that the board lost jurisdiction over him when it failed to affirmatively act to extend his parole, has been clearly rejected in Haskins v. Palmateer. And subsequently in the state's 28-J letter, in a case called Thomas, and that's cited in that letter, in which the court reaffirmed his holding in Haskins. This is a Haskins claim. We have seen these claims over and over again. It's the same claim that the state courts rejected in Haskins and in Thomas. And what the state court said in Haskins, and again in Thomas, is that the board must act affirmatively on a tentative discharge date and discharge parole. It doesn't happen automatically. Now, one of petitioners' arguments on the merits is that, well, but what kind of discretion did the board have? If it didn't have complete discretion, then he has a liberty interest in those statutes. The board had complete discretion to affirmatively discharge parole. And the way the Oregon parole statutes work, both in 1982 and 1985, which are substantially similar, is that there must be a recommendation from the supervising parole officer, board action regarding that recommendation, the board was under no obligation to follow the parole officer's recommendation but could, and then issue a certificate of discharge. The board had to do all those things. And in addition, the board had to be satisfied on the basis of parole performance that the welfare of society and the parolee will be served. That's what Haskins says. Doesn't there have to be some, quote, some evidence, unquote, to keep him on parole after he's got a tentative date? Again, the board has to. For due process reasons? Well, the board has to affirmatively act to discharge parole. And so if his parole performance is unsatisfactory. But it doesn't have complete discretion. I mean, they can't say he parts his hair the wrong way, and therefore we're going to keep him in. No, and I just listed all of those things. If the board is satisfied on the basis of parole performance that the welfare of society and the parolee will be served, that, yes. I mean, if his parole performance was excellent and there was no basis at all, the parole officer saying, yes, yes, he's a good guy and parole should be discharged. Why didn't the board act here? You know, Your Honor, I don't know the answer to that. And I don't know the answer to why they didn't ask in Haskins either. How the board operated in 1982, I'm not sure. And I'm not sure why the board was not acting in those cases. But because the board wasn't acting, these claims started to arise. That resulted in the Haskins opinion. And that's when the Court of Appeals said, well, even if the board doesn't act, the outside limit of the board's authority is the maximum date of the sentence. And to clear that up as well, that was also a confusing issue. And, again, that's why I cited Green v. Baldwin in the 28-J letter. What Petitioner says is a 36-month sentence is not a sentence. It is a period of active supervision. So there's a lot of confusion in Oregon law about periods of active supervision, the term of parole, and the sentence. So Green makes it very clear that the 36 months and those rules that we're talking about is what the board can do to extend periods of active supervision. It's not the complete parole, term of parole, which extends to the maximum expiration date of the sentence. And even though Petitioner says that the 82 rules and the 85 rules were not the same and something else happened in 86, that's just incorrect as a matter of state law. And I would refer the Court, if there are any questions about the rules, to the Haskins decision and the Green decision, which set forth the 82 rules versus the 85 rules. In Haskins, it's at page 167, note 5. And if you take a look at that, Your Honors, I might note that in note 5 there's a typo in the opinion. It should be OAR 255-90-002, not 602. That sets forth the rule that applies to Petitioner. In Green at page 356, note 2, it sets out the substantially similar 1985 version of that same rule. Why don't you, before you sit down, I think you were winding down. Before you sit down, tell us what you think the bottom line should be so when she comes to rebut, she'll be able to tell us exactly why you're wrong. Okay, Judge Harris, I will do that. The bottom line is this petition isn't timely because he didn't show the requisite due diligence. He knew the important facts, the factual predicate of his claim in 1995 when the Board first exercised jurisdiction over him, when he said it had no jurisdiction and had no authority to revoke him. Therefore, his federal habeas petition is four years too late. Regarding equitable tolling, his claim now that his parole officer misrepresented that the Board had extended parole is not credible, as the District Court found, because he told a different story, the opposite story in state court. So he's not, even if the Court were to find his petition was untimely, he's still not entitled to equitable tolling based on the reasons that he states in his blue brief. And finally, this Court may affirm on the merits. The statute of limitation is not jurisdictional. It's a Haskins claim, and under state law, his claim simply fails on the merits. Thank you. Thank you very much. I'd like to address the difference in the rules between what Haskin may have reviewed and Green again. If the Court will look on, direct its attention to Excerpts of Record 178, it sets forth the entirety of Rule 255-90-015. That rule, you will note, is different from the rule that Green cites that was effective in 1985, specifically different in that subparagraph 2 of the 82 rule becomes subparagraph 1, and it changes the context. But what's real important, the most important difference between the 82 and the 85 rules is that discharge, tentative discharge, was tied to the act of supervision period in 1982. That changed in 1985. The Board restated its rules to mention a conditional discharge and an act of supervision period and creates a distinction just through the language. That distinction did not exist in 82. So that's important as it relates to the merits. State Board, again, continues its game, its shell game. We've complained about this at the district court. It is inevitably asking Mr. Browder to figure out which shell the P for relief lies under. In its state habeas, in his state habeas case, the state, the Board, states. We're going to kind of look at this record, and when we look at this record, we see that if you're right, the advantage went to your client. The advantage of the statutory amendments in 1981? Yes, it should be. That's what you're talking about, Your Honor, with due respect. I'm talking about you said he has to look under the shell to see what, what, and what. If he had been charged rather than treated as if his parole would have been revoked, he would have had a sentence that you would have had some concern about. That's a decision for state prosecutors. We don't know that he negotiated that away. I'm not suggesting we're going to make it, but when you talk about a shell game and you've got to wonder which P to look under, you suggest that somebody's been mistreated. And on this record, your client has had every benefit, hasn't he? Not necessarily. Except for the dismissal that you now want. Your Honor, there's a, there's a different standard for parole revocations than there is for criminal justice. We can't, we can't speculate that the state could approve beyond a reasonable doubt. It chose not to. Maybe that's the reason why. Maybe it couldn't. I don't, I don't know what, what, what the shell did. How many times, how many times, how many times did he, did he, did he, did he abuse? That is correct, Your Honor. At least on this record. And that's why I even suggest to you that he might have an interest in continuing the state's resources. You represent your client, and I'm not suggesting you shouldn't. But when you then suggest that the government is doing something that I think, when you say shell game, that to me says, uh-oh, this is something kind of terrible. Well, what I'm talking about is the fact that they're suggesting that in 1995 he could have sought state habeas. In this 1999 state habeas case, the state specifically says that the only enforcement mechanism in a state habeas proceeding is release from confinement. Since the plaintiff's claim falls under the second kind of Penron-Brown case, he cannot demonstrate the right to be released. What the Board is telling you today is that all he had was a right to be considered for discharge. Well, he wouldn't have been able to obtain relief under the state's position about what state habeas relief is. He might not have even been able to succeed in not mooting out a state habeas case. That wasn't resolved until later. And one of the cases cited in the briefs resolves that issue much later. Post-1999 it resolves that, and I think it was based on a statutory amendment, that if you file when you're in custody and you then are released on supervision, you're not mooted out from your state habeas. But the position they took at that time was he was not entitled, even in 1999, not entitled to relief because all he had was the right to have the Board consider his discharge. And the Board hadn't acted yet. So it is a shell game if the Board is stating to you now that he would have had the right to relief in state habeas in 1995. That was clearly not the case. Real quickly, as to credibility, what the Board is referring you to is a pleading. His pleading in the state habeas case, it's a pleading. All it stated was he did not receive the notices he was required under the rules. He's not taking a different position. It was a pleading that said I didn't get the notice I was entitled to under the rules. He wasn't saying my parole officer and I never discussed the fact that my parole had been extended. He wasn't saying that. He was saying I didn't get the notice I was supposed to under the rules. It's not inconsistent. And if it is, again, the court should give us a hearing. The court should be able to assess his credibility when he takes the stand and is tested by cross-examination by the Board. I have one more point, I think. Why didn't the Board act? I believe it's because the law changed in 1986. And the Davidson case establishes this. At that point, 1986, it believed its mission was to continue parole for the entire duration of the sentence. It didn't get it that the old rules didn't apply that way, and it just failed to act. In so many of these parole board cases, we have a lot of parolees sitting in Oregon prisons because the Board failed to act under its 1982, 1981, 1982 rules. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. The next case on the calendar is United States v. Milan Contreras. It is submitted on the briefs. It is also submitted for decision. It brings us to the last case on today's calendar.
judges: Farris, Clifton, Bea